|  |  |
|---|---|
| EPHRAIM K. BARNUM,<br>AND<br>ZENOS BARNUM,<br>EXECUTORS OF<br>DAVID BARNUM,<br>VS.<br>CATHERINE M. RABORG<br>AND<br>CATHERINE M. McCLELLAN. | DECEMBER TERM, 1850. |

[OBJECTIONS TO APPEAL BOND—CHANCERY PRACTICE—INDEMNITY FOR DETENTION OF POSSESSION OF LAND.]

IT has never been the practice of this court to require the sureties in an appeal bond, when excepted to, to justify, in order to ascertain their sufficiency, in analogy to the practice at law in the case of bail.

The only question, in cases where an appeal bond is objected to, is, to ascertain

whether the party, who is successful in the inferior court, has, in the sureties in the bond, a secure indemnity for the injury he may sustain by the appeal, and whether this appears by looking to the value of each surety, or by an aggregation of the worth of all, is not material. If the sureties in the bond taken collectively, are sufficient, the bond is sufficient, and must be approved.

The land in this case was sold on the 8th of May, 1848, to satisfy the purchase money therefor due the complainants. The order confirming this sale was appealed from, and was affirmed by the Court of Appeals, on the 21st of June, 1850. In his account, the Auditor calculated interest upon the claim up to the day of sale, and then, interest upon the whole aggregate amount, to the date of the affirmance of the order above mentioned. The defendants excepted upon the grounds, that the complainant's claim as it stood on the day of sale, should not have been treated as principal, but that interest should only have been charged upon the original principal debt ; and that the remedy for any loss occasioned by the delay consequent upon the appeal was upon the appeal bond, and not against the fund in court. Held—

That if a debtor's property be sold on credit to pay his debts, his creditors using due diligence in getting their money from the trustee, on the day of its receipt by him, would be receiving not only simple interest on their debts from their maturity, but interest compounded from the day of sale. And this right of the creditor should not be prejudiced by any act of the debtor, as by an appeal and the filing of an appeal bond.

Though the appeal bond might be resorted to, yet if the sureties in it were made to pay the money, they would be entitled to come into this court, and ask indemnity out of the fund ; and, therefore, there can be no propriety in turning the creditor over to the sureties in the first instance, creating thereby unnecessary circuity, and, perhaps, exposing them to loss.

Where a sale is made on credit, and the defendant refuses to give the purchaser possession, it is very clear, that the purchaser cannot be made to pay interest for the benefit of the defendant, for the time he was deprived of the possession.

And where a sale was made for cash, and the money paid, and possession of the property retained by the defendant, the purchaser will be indemnified for this loss out of the proceeds of sale in court belonging to the defendant, though the appeal bond be also answerable therefor.

[The bill in this case was filed on the 4th of March, 1845, by the complainants, Ephraim K. Barnum and Zenos Barnum, as executors of David Barnum, deceased; and states, that on the 8th of July, 1844, the complainants, as executors as aforesaid, sold certain parcels of land situated in Baltimore county, to Catharine M. McClellan and Catharine M. Raborg, for the sum of $12,000; but at that price to be freed and cleared from a mortgage given by their testator, to one George Brown, for a debt of $8,000, dated the 8th of April, 1841.

45

The bill then states and charges, that though the said purchase money has long since become payable, yet no part of it, nor the interest thereon, (except an interest payment to said Brown, upon said mortgage debt,) has been paid. That the said sale for the said sum of $12,000 having been made subject to the discharge of the said mortgage out of the purchase money, and the interest on said mortgage debt having been paid up to the day of sale, it is understood, that the complainants are to receive the sum of $4,000 with interest from the day of sale, and are, thereupon, to convey to the said Raborg and McClellan, the land subject to said mortgage claim : said Brown agreeing to accept said purchasers as debtors in place of the complainants.

The bill further states and charges, that though demand had been made for payment of said $4,000 with interest; yet no part of said sum had been paid, and the complainants were not only unsatisfied in that respect, but are yet, as executors, concerned in reference to said mortgage debt; said Brown having assented to hold said executors and their testator's estate harmless from said mortgage claim ; but no formal covenant to that effect has as yet been executed.

The bill then prays, that the land may be decreed to be sold for a sum to embrace said mortgage indebtedness, and so as to be clear of said mortgage claim, and that, out of the proceeds of sale, said mortgage debt be paid and the said $4,000 and interest, as aforesaid, and for further relief. The parties to this bill, were the said Catharine M. Raborg and Catharine M. McClellan.

These defendants having been duly summoned, but failing to appear, an interlocutory decree was passed against them, on the 28th of July, 1845, and an *ex parte* commission issued, according to the Act of Assembly. Under this commission, which was returned and filed on the 7th of August, 1845, the complainants proved the following agreement :

"We acknowledge that we became on the 8th day of July, eighteen hundred and forty-four, purchasers from Zenos Barnum and Ephraim K. Barnum, executors of David Barnum, for the price of twelve thousand dollars, payable with interest, from

said day of purchase, of the real estate of the said David Barnum, known as 'Belmont,' and as said David's country seat. We hereby bind ourselves and our heirs, on demand, to pay said executors, the said purchase money with interest aforesaid, part of said purchase money being eight thousand dollars of principal, for which George Brown has a mortgage lien on said estate. As witness our hands and seals this twenty-first day of December, in the year eighteen hundred and forty-four.

C. M. RABORG, [*Seal.*]
C. M. McCLELLAN, [*Seal.*]

Witness, as to Catharine M. Raborg,
H. C. McCLELLAN.
As to Catharine M. McClellan,
C. R. McCLELLAN."

On the 8th of August, 1845, the defendants appeared to the suit by counsel. And on the 27th of the same month, filed their petition, praying that the interlocutory decree might be rescinded, and leave granted them to file their answer. And at the same time, in pursuance of the provisions of the 5th section of the act of 1832, ch. 302, the defendants filed exceptions to the averments of the bill. "As being insufficient in this: that they do not show whether the mortgage debt to George Brown, is, or is not due, and if due, when it became payable. And they further object, that the said George Brown should have been made a party to said bill, the relief prayed embracing the sale of his interest in the property, for the sale of which a decree is sought to be obtained."

On the above petition, the Chancellor (Bland) on the 4th of October, passed the following order:

"This application having been made before the close of the July term, it is ordered the interlocutory decree of the 28th of July last, be and the same is hereby set aside; and the said defendants are permitted to file their answers as prayed by the foregoing petition." Whereupon, on the same day, the defendants filed their answer, in which they admit that they became the purchasers of the property as stated in the bill, and that the purchase money therefor, is due and unpaid, except the interest on George Brown's mortgage debt, and that it was the purpose of the respondents soon to discharge it. The

answer also insists, "that proper parties have not been made to the bill, and that respondents are advised that George Brown, whose interest the bill prays, may be decreed to be sold, is a proper party, and that the interest of these respondents may be sacrificed, or impaired by the sale of said property, if decreed to be made, without enabling the trustee to be appointed for that purpose to convey a perfect title thereto to the purchaser thereof," &c.

On the 1st of December, 1845, the complainants filed the following disclaimer : "To obviate all objections suggested in the answer in this cause, because of George Brown not being made a party to this suit ; the plaintiffs (protesting that it was unnecessary to make said Brown a party upon the terms of the purchase stated in the bill) hereby beg leave to renounce and disclaim any relief against said Brown, and any decree at all affecting his interest in the real estate in the proceedings mentioned, whether under the mortgage referred to in the bill or otherwise ; and the plaintiffs are content to be limited to a decree to sell said real estate for the purchase money, and interest due by the said defendants, subject to all claims and rights, and interests of any kind, of the said George Brown, as aforesaid."

On the 21st of January, 1846, the cause having been submitted without argument on the part of the plaintiffs, and none having been offered on the part of the defendants during the sittings of the term, the Chancellor passed a decree for the sale of the property "to satisfy the claim of purchase money, principal and interest, as in the proceedings specified," and appointed Samuel H. Taggart, Esq., of Baltimore, trustee for that purpose, and directed that he should give, at least, three weeks notice by advertisement in such newspaper or newspapers, as he shall think proper, of the time, place, manner and terms of sale, and that such terms should be "cash on the day of sale," &c. From this decree, the defendants, on the 26th of January, 1846, entered an appeal and filed their appeal bond which was duly approved by the Chancellor, and the appeal granted accordingly; and the 30th of March, 1848, the decree was affirmed by the Court of Appeals.

On the 17th of April, 1848, the trustee filed his bond, which on the same day was duly approved. And on the 9th of May, following, he filed his report of sale, in which he states, that having given notice as required by the decree, by advertisements in the Baltimore Patriot and American, two of the daily newspapers of Baltimore, three times a week for more than three successive weeks before the day of sale, he did, pursuant to said notice, attend upon the premises, on Monday the 8th of May, 1848: and then and there proceeded to sell said real estate, and sold the same to Zenos Barnum, he being then and there the highest bidder therefor, at and for the sum of $6,600 cash, according to the terms of the decree. And that said Barnum at the time of said sale, paid to the trustee the said sum of $6,600, which he is now ready to bring into this court when required so to do, &c. Upon this report the Chancellor, (Johnson,) on the same day, passed an order that said sale be ratified, unless cause be shown to the contrary, on or before the 10th of July, then next, provided, a copy of the order be published as usual.

On the 8th of July, 1848, the defendants filed a petition, objecting to the ratification of the sale, and assigned the following reasons for setting it aside: 1st. Because the trustee at the time of the sale and when on the premises, and without any previous notice to that effect, notified the persons present, that no bid for said property would be received from any one who was not prepared to pay the cash to the amount bid before leaving the premises; which notice had the effect of chilling the biddings for said property, and restrained persons present, who were disposed to become purchasers, from bidding for the same, and thereby lessened the sum for which said property would otherwise have sold. 2nd. Because by reason of said notice, Lewis Cassard and George Cassard, who were present at said sale, with a view to purchase said property, and who would have advanced upon the price at which the same was struck off, were restrained from bidding for the same to the full amount, to which they would otherwise have gone. 3rd. Because whilst, by the notice aforesaid, said Cassards, as well as

45*

others, were restrained from bidding for said property. Zenos
Barnum, the purchaser, who was one of the complainants, was
not required to pay down the cash on the premises before leav-
ing the same.    4th. Because said property was sold for less
than it was really worth, and so sold because of the terms pro-
claimed by the trustee, by which persons disposed to purchase
were surprised.

Upon these exceptions, the Chancellor, on the 10th of July,
passed an order, setting them down for hearing on the 9th of
September, then next, with leave to the parties to take deposi-
tions before any justice of the peace on three days notice to
the opposite party, to be read at the hearing, provided said de-
positions are returned on or before that day.    The answer of
the trustee to these exceptions, which was filed on the 7th of
September, 1848, states, in answer to the first reason
assigned for setting aside the sale, that he admits that in exe-
cution of his duty as trustee, and in obedience to the decree
under which he acted, he did state that he should expect pay-
ment or satisfaction from the purchaser before leaving the
premises, and assigns as a reason for doing this, that the de-
fendants, the present petitioners, at the time of the original
purchase, had given to said Barnums, a check on the Bank of
Baltimore in payment of the first instalment of the purchase
money, which check, drawn by Samuel McClellan, was not
honored, he having no funds in said bank, and the trustee
fearing a similar expedient would again be resorted to, and
to prevent the petitioners from baffling the order of the court,
gave the notice aforesaid.    The trustee further states that he
does not know, and does not believe, that his said declaration
had the effect of chilling the biddings for the property.    That
if any one of good credit had become the purchaser, he would
have allowed any reasonable time for complying with the terms
of sale.    That said premises were not more than a mile and a
half from the major part of the banks of Baltimore city, so
that a bidder might have procured the requisite funds, within
an hour and a half from his purchase.    That he would have
received the check of any person in good credit for the whole

amount of said purchase money. That the biddings were spirited, &c. 2nd. That he has no reason to believe, and does not believe that the said Cassards, or either of them, were restrained from bidding for said property, on the contrary, one of them bid several times, and as respondent believes, within fifty dollars of the sum at which it was struck down. 3d. This respondent avers, that at the place of sale, and immediately after the premises were struck down, said Barnum, the purchaser, gave the trustee his check, on Josiah Lee, a respectable private banker, in Baltimore, for the whole amount of the purchase money, which was duly paid, and the purchase money is now in his hands subject to the order of the court. 4th. That he has no reason to believe said property sold at any under value, nor does he believe, that upon a resale, the premises would yield a larger sum. A copy of the advertisement, stating that the terms of sale as prescribed by the decree are cash on the day of sale, was filed with this answer.

Depositions were taken under the above order, and filed on the 6th and 8th of September. The defendants in support of their petition and exceptions, after due notice given to the opposite party as required by said order, proved by George Cassard, that he attended the sale with his brother Lewis, with the intention of buying the property if it sold right. That he and his brother, after they arrived on the ground, agreed that they would go as high as $15,000, net, for it, that in witness' opinion, they would have bid more rather than have lost. That after the sale was commenced, the trustee and auctioneer stated that the purchase money must be paid there, on the spot, or words to that effect. That witness consulted with his brother after this condition was stated, and hesitated to bid at all; but seeing Mr. Preston make a bid, his suspicions in some measure were dispelled, and confidence in some degree restored. That their bid was fifty dollars less than the bid which took the property. That they did not bid so much as they would have done, on account of the condition above stated. That they were prepared to comply with the terms of sale as advertised in the ordinary understanding of those terms. Had not the

whole amount in bank, but could have paid it before 3 o'clock of that day. Thinks the property is worth $15,000, and more. When he stated that he and his brother would have gone to $15,000, witness meant that they would have paid that for a clear and unincumbered title to the property, computing the mortgage as a portion of the purchase money, amounting to about $8,000. He, witness, had conditionally arranged with Brown, the mortgagee, to defer the payment, and indulge witness with time. Witness took no money with him on the day of sale, except the change in his pocket. He and his brother were willing to risk in making their bids, that their check would be taken, or that the trustee would wait until they could come to town and return with the money. Has no recollection of making an application to the trustee as to whether their check would be taken in the event of their purchase of the property. Witness staid upon the ground until the dispersion of most of the company, saw no money paid by Mr. Barnum, but heard him call for writing materials for the purpose of giving a check to Mr. Taggart.

John B. Cannon deposed, that he was at the sale as principal auctioneer; that the auctioneers were directed by the trustee to announce, and did announce, that the terms of sale were to be complied with on the spot, immediately after the sale. Witness has been an auctioneer about sixteen years, and in that time has sold many estates, both in town and country. Has never known a sale of real estate, in the country, for cash entirely; and in the city has never known a sale for cash, of real estate, in which a similar condition was imposed. Witness, from his knowledge of Mr. Cassard, would have received his check for any bid he might have made for the property on the day of sale, and would have so advised the trustee. Mr. Barnum gave his check immediately for the amount of his bid, and the trustee gave a receipt for it.

John Brown deposed, that he was present at the sale, but not with the expectation of buying the property. Understood the terms to be cash upon the spot, on the ground. Had examined the place before, and had offered $15,000 for it early

who said he would like to buy the place, but that he thought there was something wrong, and he would not bid for it. This was after the terms were announced by the auctioneer, and while the sale was going on, and the bidding was half through. Never heard such terms before, and could not have complied with them had the property been sold to witness for $100, not having the money with him. Could have paid 5 or $10,000 for it during the day, but not at the moment. The property sold is a little over a mile from the court-house.

The complainants and trustee, in support of the sale proved by Josiah Lee, that on the morning of the day of sale, the trustee called at witness' bank and inquired if the check of Mr. Barnum was good for 5 or $10,000 ; to which inquiry, witness replied that it was. Witness understood Mr. Taggart's inquiries directed for the purpose of ascertaining the goodness of the checks that might be offered in payment of the property. The checks of men of undoubted credit are daily received as cash at the banks of Baltimore.

William P. Preston was present at the sale, and bid for the property $14,000, that being the value he had made up his mind to give for it. If he became the purchaser, witness expected to pay partly in cash, and with a check for the balance. Had no doubt, after hearing the terms of sale, that if witness had tendered his check to the trustee, he would have accepted it. Witness is an attorney at law, and from his experience in business, is able to say, that checks of men of undoubted credit, are daily received by the banks as cash. There were other bidders at the sale, and the bidding was spirited. Expected to get a clear and unincumbered title to the property for $14,000, freed from the lien of the mortgage of $8,000 held by George Brown.

Andrew McLaughlin deposes, that he is the husband of a daughter of the late David Barnum, who is a legatee of said Barnum. That Zenos Barnum, the purchaser, has no interest in the estate of David Barnum, other than as the executor of his will. That the said purchase was made by said Zenos Barnum, on his own account, and not in any way for the use of the estate.

These witnesses were produced before the justice, by the purchaser, immediately after the examination of the witnesses on the part of the exceptants, had closed, and in the presence of the counsel on the part of the exceptants, who objected to the examination, on the ground that said purchaser had not given them the three days notice required by the order; and, before the hearing, they filed exceptions to admissibility of these depositions on the same ground. The purchaser also excepted to so much of the deposition of John Brown as speaks of an alleged conversation between the witness and some person described, the same being hearsay, and not competent testimony.

On the 11th of September, 1848, the Chancellor passed the following order upon the petition of the defendants objecting to a ratification of the sale:

"The within petition, objecting to the ratification of the sale made by the trustee in this case, standing ready for hearing, and being submitted, on the part of the trustee and purchaser, the same, with the answer of the trustee, and the depositions and other proceedings, were, by the Chancellor, read and considered; and, it being the opinion of the Chancellor that the objections to the sale have not been sustained by the proof, it is, therefore, ordered that the said petition be, and the same is hereby dismissed, with the costs, to be taxed by the Register."

On the same day, the Chancellor also passed an order, finally ratifying and confirming the sale, "no sufficient cause to the contrary having been shown."

From this latter order, the defendants entered an appeal on the 14th of September, 1848, and on the same day, filed an appeal bond in the penalty of $5,000, with Eliza A. McClellan, and William M. McClellan as sureties, which, on the same day, was proved by the Chancellor. Two days thereafter, to wit, on the 18th of September, Zenos Barnum, the purchaser, filed his petition, in which he avers that the said sureties, in said bond, were not sufficient for the purpose, not being worth, over and above their debts, the sum of $5,000, the penalty of said bond, and prays that it may be rejected, and the

appellants required to file a new bond, or, in default thereof, that they be required to surrender possession of the premises. On this petition, an order was passed the same day, setting it down for hearing on the 14th of October then next, with leave to take depositions in relation to the matter therein contained, upon the usual notice, &c.

By depositions of various witnesses, taken under this order, it was proved that Eliza A. McClellan, one of the sureties, owns unincumbered real estate worth $7,000, besides other property; that she owes nothing, and has never entered into any other bond. That the other surety, William M. McClellan, had been protested at various times for notes of small amount; that he has no commercial credit, no credit at bank, and was not punctual in payment of his debts; but, it was also shown, that he owns a very large real estate; that the aggregate of his property is about $100,000. His indebtedness, or the liens upon his estate, were not shown.

The matter of this petition was argued upon notes by the respective counsel, and on the 16th of October, 1848, the following opinion was delivered, and order passed.]

THE CHANCELLOR:

I have read carefully the evidence taken by the parties under the order of the 18th of September last, passed upon the petition of Zenos Barnum, objecting to the sureties in the appeal bond filed by the defendants in this case, and am of opinion, that the objections are not sustained.

The solicitor for the complainants and purchaser, suggests, that the sureties in an appeal bond, if excepted to, should justify, in analogy to the practice at law in the case of bail.

But the late Chancellor in *Ringgold's Case*, 1 *Bland*, 27, says, "there does not appear to be any settled mode of proceeding, by which to cause the sureties to justify to ascertain their sufficiency, and I am persuaded such has never been the practice of this court in cases similar to the present."

The proof shows very clearly in this case, that one of the sureties is worth more than the penalty of the bond, and though

the other surety may be destitute of commercial credit, it is impossible, looking to his property, to consider him merely a *nominal* party.

The great and only question in such cases as the present, is to ascertain, whether the party who is successful in the inferior court, has, in the sureties in the bond, a secure indemnity for the injury he may sustain by the appeal, and whether this appears by looking to the value of the estate of each surety, or, by an aggregation of the worth of all, does not seem to me to be material. If the sureties in the bond taken collectively are sufficient, the bond is sufficient, and must be approved.

It is therefore ordered, that this petition be dismissed with costs, to be taxed by the Register, and that the appeal bond be approved.

The order ratifying and confirming the sale, was affirmed by the Court of Appeals, on the 21st of June, 1850, for the reasons assigned by the Chancellor, and the cause remanded to this court. On the 26th of June, the complainants filed their petition, praying that the cause might be reinstated and referred to the Auditor, with directions to state an account making proper allowances to the complainants and purchaser out of the surplus proceeds of sale, for the injury which they have sustained by the said appeal, and that a writ of *habere facias possessionem*, may be issued to put said purchaser in possession of said premises. An order was the same day passed referring the case, according to the prayer of this petition, and granting a writ of injunction directed to the defendants to deliver possession to the purchaser.

The Auditor stated an account in compliance with this order by which he applied the net proceeds of sale, first, to the payment in full of the complainants' claim for the purchase money due to them, with interest to the day of sale, amounting to $4,920. The interest was then calculated upon this whole claim as of that day, to the date of the affirmance by the Court of Appeals, of the order ratifying the sale, 21st of June, 1850. This interest amounted to $630 58. This claim was stated with reference to a credit of $600, to be allowed as of the 27th

of June, 1850, by an agreement of the parties filed in the cause, with a proper rebate to the date of the decree affirming said order. The residue was then applied to the payment in full of the complainants' costs in the Court of Appeals on the second appeal, and the balance of $1,207 45 assigned to the purchaser in part remuneration for the damage sustained by him in consequence of the non-delivery of possession, the sale having been made for cash, and terms having been duly complied with. The measure of such damages were assumed to be the interest on the purchase ($6,600,) increased by the amount of the incumbrance ($8,000,) subject to which the purchase was made, from the day of sale to the date of his obtaining possession, (27th of June, 1850,) according to the instructions of the solicitor for the purchaser. A large balance was left still due on this claim after the application of the said $1,207 45, the whole claim amounting as then estimated to the sum of $1,871 23.

This account, and report of the Auditor accompanying it, was filed on the 20th of July, 1850, and on the 5th of December, 1850, the defendants excepted to the allowance of these items of $630 58 to the complainants for additional interest, and $1,207 45, to the purchaser for loss resulting from the non-delivery of possession. *To the first,* because, as between the complainants and the defendants, their rights growing out of their relations, were determined by the sale of the property, and by its conversion into money, which was applicable to the discharge of the debt due by the defendants. The delay consequent upon the proceedings in regard to the ratification of the sale, it is submitted, whatever of loss it may have occasioned the complainants, is not to be recompensed by any resort to the proceeds of the property sold, but that the complainants' remedy, if any, is by a different proceeding, and personal, against the defendants. But if this be not so, and the Court of Chancery be competent to appropriate the fund in the hands of the trustee, it is insisted, that the Auditor should have calculated the interest on $4,000 from the 8th of July, 1844, to the 27th of June, 1850, and then deducted the credit of $600

46                              °

as of the 6th of July, 1850, instead of calculating the interest to the 8th of May, 1848, and then compounding on that sum up to the 27th of June, 1850.

To the allowance of the item of $1,207 45, the defendants object.

*First,* Because there is no case before the Chancellor in which the respective claims of the purchaser and the defendants as against each other can be adjusted, or an account between them stated. Zenos Barnum was but the purchaser of the estate, the defendants the debtors upon the claim under which the property was sold, the controversy between them in the Court of Chancery affected only the validity of the sale reported by the trustee, and the damage resulting from the delay consequent upon the appeal from the order of ratification is covered by the appeal bond, to which the purchaser may resort for indemnity. But the defendants respectfully insist that it is not competent for the Chancellor in any condition of this case, to determine how far the purchaser has been damnified by the course of the defendants, and to assess and liquidate his damages. That can only be done by a resort to the bond of the defendants, and in a different form.

*Second.* There is no evidence from which the Chancellor can determine the amount of damage the purchaser has sustained, if it be conceded that it is competent for this court to assess it, and enforce its payment in this suit. The assumption that the possession of the property was equivalent in value to the interest of the purchase money, is altogether arbitrary. It may have been worth more, or much less, and it is impossible, therefore, to say, that the measure of damages in this case is the precise interest. It cannot escape the observation of the Chancellor, that if this audit be confirmed, the defendants are made to pay not only the interest due by them up to the day of the final settlement of this controversy, but interest for a large portion of the same period upon the whole purchase money of which that debt is a part.

The defendants, therefore, maintain that these items are not allowable, and that the same, or a portion of them are not even cognizable in this court.

Upon these exceptions, the following opinion was delivered on the 7th of December, 1850.]

THE CHANCELLOR:

This case is submitted by consent, upon exceptions to the report of the Auditor of the 18th of July last. The exceptions briefly, but very clearly, state the objections to the report, and some suggestions have been made by the solicitor of the parties interested in maintaining it.

The first exception relates to the allowance, by the Auditor, of interest upon the claim of the complainants from the day of sale, to the date of the affirmance by the Court of Appeals, of the order of this court ratifying it. This is objected to, first, upon the ground, that the complainants' remedy, if any, for the loss occasioned by the delay consequent upon the appeal, is, by a different proceeding, and personal against the defendants. And, secondly, that if the complainants may resort to the proceeds of sale, to indemnify them from this loss, it was not proper in the Auditor to calculate interest upon the claim to the day of sale, and interest upon the whole claim, as of that day, to the date of the affirmance, by the Court of Appeals. In other words, that the complainants' claim as it stood on the day of sale, should not have been treated as principal, but the interest should only have been charged, upon the original principal debt.

With regard to this last objection, I consider it met and answered, by the case of *Ellicott* vs. *Ellicott*, 6 *Gill & Johns.*, 35, where it is said, that if the debtor's property be sold on credit, to pay his debts, his creditors using due diligence in getting their money from the trustee, on the day of its receipt by him, would be getting not only simple interest on their debts from their maturity, but interest compounded from the day of sale; and it seems to me very clear upon principle, that if the creditor is precluded of this right by the act of the debtor, as for instance, by appealing, as in this case, and filing an appeal bond, that the rights of the former should not be prejudiced. The debtor cannot be heard to say, that the claim of his creditor,

shall be in any way impaired, not by his own omission or negligence, but by the act of his debtor, over which, he, the creditor, could exercise no control.

· The objection that the claim of the creditor for this additional interest, is personal against the debtor, and cannot be enforced against the proceeds of sale, cannot, I think, be supported. The appeal bond might no doubt be resorted to, for any injury or loss, occasioned by the appeal; but there can be as little doubt, I presume, that if a recovery was had upon the bond, and the sureties were made to pay the money, they would be entitled to come here, and ask for indemnity out of this fund; and if this be so, I cannot perceive the propriety of turning the creditor over to the sureties in the first instance, creating unnecessary circuity certainly, and perhaps, exposing them to loss. Upon the same principle, that the costs of the appeal are allowed out of the fund, (and this allowance is not objected to,) the additional interest should be allowed, these costs are equally a personal claim as the interest, and equally covered by the appeal bond.

The remaining exceptions relate to the allowance to the purchaser, if the sum of $1,207 45 for loss sustained by him, in consequence of not obtaining possession of the property, the sale having been made for cash, and the terms having been complied with. That the purchaser is entitled to indemnity for this loss, is not, I presume, denied; but for this also, it is said, the remedy is upon the appeal bond, and not upon the proceeds of sale. The purchaser bought subject to an incumbrance of $8,000, and the amount of the sale being $6,600, the property cost him $14,600, the interest on this sum, from the day of sale, until the order of ratification was affirmed by the Court of Appeals, amounts to $1,871 28; but the residue of the proceeds of sale, only amounting to $1,207 45, that sum only was assigned to the purchaser, by the Auditor, being but little more than interest at the rate of four per cent. per annum, on the purchase money. That the loss occasioned by the acts of the defendants in withholding the possession of the property from the purchaser, entitled him to have recourse to the appeal bond, is

very certain; but this does not prove, that the proceeds of sale being in court, may not be applied to his indemnity. If the sale, instead of being for cash, had been on credit, and the defendant had refused to give the purchaser possession, until coerced by the authority of the court, it is supposed to be very clear that the purchaser could not be made to pay interest for the time he was deprived of the possession, for the benefit of the defendant.

No opinion is meant to be expressed, with regard to the obligations of the purchaser, under such circumstances, to pay interest, so far as creditors are concerned, but if the principal proceeds of sale should be sufficient for their payment, the defendant refusing to surrender the possession of the property, would never be allowed to claim interest as against the purchaser. But in this case, the sale was for cash, the money was paid, and the possession of the property retained by the defendant. The purchaser, therefore, lost the interest upon the purchase money, and he was also compelled, or will be compelled to pay the principal and interest of the elder incumbrance, and the question is, shall he not be indemnified for this loss out of the residue of proceeds of sale, which would otherwise be paid to the defendants? The justice of making him this indemnity, is too plain to be disputed, and, I think, the technical objection should not be permitted to prevail. According to what is understood to be the received doctrine in this state, *five per cent. per annum*, is considered an equivalent for the use of real estate, that being supposed to be about the average annual value of this description of property. But the allowance here is less than *five per cent.*, and, therefore, it seems to me, I can be doing no injustice to the defendant by confirming this report of the Auditor, and shall pass an order accordingly.

S. H. TAGART, THOS. S. ALEXANDER for Complainants. JOHN NELSON, WM. SCHLEY for Defendants,